28 F.3d 416
 Charles G. GRIGG, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT of LABOR, Respondent.
Charles G. GRIGG, Petitioner,
v.
DIRECTOR, OFFICE of WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT of LABOR, Respondent.
 Nos. 92-1591, 92-2462.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 13, 1994.
Decided July 1, 1994.
 
 ARGUED: Ray Edmond Ratliff, Jr., Charleston, WV, for petitioner. Cathryn Celeste Helm, Office of the Solicitor, U.S. Dept. of Labor, Washington, DC, for respondent. ON BRIEF: Marshall J. Breger, Solicitor of Labor, Donald S. Shire, Associate Sol., Michael J. Denney, Counsel for Appellate Litigation, Office of the Sol., U.S. Dept. of Labor, Washington, DC, for respondent.
 Before HALL and WILLIAMS, Circuit Judges, and GODBOLD, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 Remanded by published opinion. Judge HALL wrote the opinion, in which Judge WILLIAMS and Senior Judge GODBOLD joined.
 OPINION
 K.K. HALL, Circuit Judge:
 
 
 1
 Charles Grigg petitions for review of an order of the Benefits Review Board (BRB), affirming the decision of an administrative law judge (ALJ), denying his claim for black lung benefits. He also petitions for review of the denial of his motion for reconsideration. We remand the claim for expedited reconsideration.
 
 I.
 
 2
 Charles Grigg was born on June 9, 1913. He went to work in the mines in 1937 and worked off and on there until 1975, when he was injured on the job. He had 25 years of coal mine employment. He filed this claim for black lung benefits in 1975. After ten years, he received a hearing. The Director conceded that Grigg had invoked the interim presumption through the greater weight of the x-ray evidence, 20 C.F.R. Sec. 727.203(a)(1), and the ALJ so found. The ALJ also found, however, that the presumption was rebutted. Grigg appealed to the BRB.
 
 
 3
 In 1989, the BRB reviewed Grigg's file. It discovered that the transcript of the hearing had been lost. The claim was remanded for a new hearing.
 
 
 4
 A new hearing was held, before a different ALJ, on February 12, 1990. Notwithstanding the Director's renewed concession that the (a)(1) interim presumption had been invoked, the ALJ found that it had not. In addition, the ALJ ruled that, even if the presumption had been invoked, it would have been rebutted under either 20 C.F.R. Sec. 727.203(b)(2) or (b)(3). The BRB affirmed on only the (b)(3) rationale.
 
 
 5
 Grigg petitioned for review (No. 92-1591); he also sent a letter to the BRB asking for assistance, which the BRB treated as a motion for reconsideration. Reconsideration was denied, and Grigg filed a new petition for review (No. 92-2462).
 
 
 6
 Before No. 92-2462 was filed, the Director of the Office of Workers' Compensation Programs (DOWCP) moved to dismiss No. 92-1591 as interlocutory. Grigg responded that he did not intend his letter to be construed as a motion for reconsideration. This dispute no longer makes any difference. Because Grigg filed a new petition for review when reconsideration was denied, the court must have jurisdiction over one petition or the other. We deny the motion to dismiss as moot.
 
 
 7
 In its brief on appeal, DOWCP concedes that the ALJ erred in not invoking the presumption and in finding (b)(2) rebuttal. As for (b)(3) rebuttal, DOWCP asks that the claim be remanded because the ALJ failed to consider the report of Dr. Wurst, Grigg's treating physician.
 
 II.
 
 8
 The points that DOWCP concedes need not detain us long, but we will describe them for completeness' sake. 20 C.F.R. Sec. 727.203(a)(1) permits invocation of the interim presumption with x-ray evidence that the miner has pneumoconiosis. There are many x-ray readings in the record, dating from 1960 to 1984, and, according to the first ALJ's opinion, the x-rays show "a slow but steady progression in the readings." DOWCP conceded that the presumption should be invoked, and the first ALJ did so. On remand, though, the second ALJ found that four positive x-ray readings were unreliable because they showed progression of the disease ten years after Grigg had left the mines: "I take judicial notice of the predominant medical opinion, that pneumoconiosis, particularly in the early stages is not progressive for a period after 5 years from leaving the coal mines."
 
 
 9
 As the parties stipulate, the ALJ erred here. A medical opinion is not a fact of which judicial notice may be taken, and stipulations of fact are binding when received into evidence. 29 C.F.R. Sec. 18.51. In any event, the BRB did not rely on this rationale in affirming the ALJ, so we would be unable to affirm on this ground under the Chenery[1] doctrine even if we were so inclined. Dayton v. Consolidation Coal Co., 895 F.2d 173, 175 (4th Cir.1990), rev'd on other grounds, Pauley v. BethEnergy Mines, 501 U.S. 680, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991).
 
 III.
 
 10
 Likewise, DOWCP concedes that the ALJ's 727.203(b)(2) rebuttal finding is untenable. To establish (b)(2) rebuttal, the respondent must show that the claimant is able, from a whole-man standpoint, of doing his usual coal mine or comparable gainful work. Sykes v. Director, OWCP, 812 F.2d 890 (4th Cir.1987). No one disputes that Grigg is disabled; indeed, his Social Security disability award (dating from 1975) was in evidence. Again, even if this finding were not improper, it was not relied upon by the BRB, so affirmance on this basis would be improper.
 
 IV.
 
 11
 We now arrive at the central issue. The interim presumption can be rebutted if the "evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. Sec. 727.203(b)(3). Rebuttal under this provision is difficult. The respondent must "rule out the causal relationship between the miner's total disability and his coal mine employment in order to rebut the interim presumption." Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 (4th Cir.1984).
 
 
 12
 The opinions relied on by the ALJ--rendered by Doctors Zaldivar and Daniel--find that Grigg has no pulmonary impairment. They are not expressly stated in causal terms. Nevertheless, DOWCP argues that their opinions could be sufficient to establish (b)(3) rebuttal under the BRB's decision in Marcum v. DOWCP, 11 BLR 1-23 (1987). In Marcum, the BRB reasoned that because pneumoconiosis causes pulmonary disability, an opinion finding no respiratory or pulmonary impairment is sufficient to "rule out" any connection between coal mine employment and the miner's total disability, even if the cause of that total disability is not identified. We cannot deny the facial logic of this reasoning.
 
 
 13
 DOWCP asks us to confirm that the Marcum rule comports with Massey. We will do so, but, because the Marcum rule is deceptively simple and hence capable of misapplication,[2] we think it critical to express our understanding of its limits and how it can be applied in a manner compatible with our precedents.
 
 
 14
 First, we should emphasize that Massey, and not Marcum, is the law of this circuit. Our inquiry in any individual case will remain whether Massey is satisfied, and a mere citation to Marcum by the ALJ or BRB will not conclusively resolve that question.
 
 
 15
 Next, the logic of Marcum can satisfy Massey 's rigorous standard only where the relevant medical opinion states, without equivocation, that the miner suffers no respiratory or pulmonary impairment of any kind. Such opinions are more persuasive if they identify what the physician considers the actual cause or causes of the miner's disability. The bugaboos to be avoided are applications of Marcum to opinions that merely state that the miner's impairment is not disabling in and of itself--which Massey directly forbids as (b)(3) rebuttal--and, in a related vein, opinions that question the miner's whole-man disability, which are properly evaluated under (b)(1) or (b)(2). Sykes, 812 F.2d at 893-894. See also Cort v. Director, OWCP, 996 F.2d 1549 (3rd Cir.1993).[3]
 
 
 16
 Further, we understand DOWCP to argue that Marcum applies primarily where the interim presumption is invoked under (a)(1), and, because this case involves such invocation, we limit our approval of Marcum to that subsection. It cannot rationally apply where the presumption has been invoked under (a)(4), because (a)(4) invocation presupposes that the greater weight of the evidence shows a totally disabling respiratory or pulmonary impairment. To then credit an opinion on rebuttal denying any impairment would be irreconcilable with the finding at the presumption invocation phase.[4] Cf. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 150, 108 S.Ct. 427, 435, 98 L.Ed.2d 450 (1987) (if existence of pneumoconiosis is established by x-rays, biopsy, or autopsy under (a)(1), rebuttal under (b)(4)--the miner does not have the disease--is unavailable).[5]
 
 
 17
 DOWCP also argues that a "no respiratory or pulmonary impairment" opinion can satisfy Massey and rebut (a)(1) invocation even if the physician rendering the opinion has premised it on an erroneous finding that the claimant does not suffer from pneumoconiosis. We differ with DOWCP here. We agree with those circuits that have held, in analogous circumstances, that such opinions are not worthy of much, if any, weight. See Tussey v. Island Creek Coal Co., 982 F.2d 1036, 1042 (6th Cir.1993) ("[T]he main point of [the physician's] report was that [the claimant] did not have coal workers' pneumoconiosis. This was already established by the x-ray evidence, depriving his observations of any probative value."); Peabody Coal Co. v. Shonk, 906 F.2d 264, 271 (7th Cir.1990) (approving ALJ's decision to "distrust" physicians' opinions concerning pulmonary impairment where those physicians "rejected the possibility that [the claimant] had [pneumoconiosis] at all"); Garcia v. Director, OWCP, 869 F.2d 1413, 1417 (10th Cir.1989) ("[The physician's] conclusions were based on a finding that [the claimant] did not have pneumoconiosis. This misdiagnosis greatly weakens [the physician's] conclusion that [the claimant's] breathing impairment was nonrespiratory."). Though we need not go so far as to hold that such an opinion is without any probative value, we do conclude that it does not have enough force to satisfy Massey.
 
 
 18
 Here, both Dr. Zaldivar and Dr. Daniel found no pulmonary dysfunction, and they identified advanced age and hypertension as alternative explanations for Grigg's total disability.[6] Dr. Zaldivar, however, did not diagnose pneumoconiosis, though Dr. Daniel's more detailed report conceded the presence of the disease.
 
 
 19
 Three other physicians found that pneumoconiosis was present and did impair Grigg's pulmonary function. Dr. Rasmussen found a moderate degree of pulmonary impairment, as did Dr. Gajendragadkar and Grigg's treating physician, Dr. Wurst. Though Dr. Wurst is not as highly qualified as the other physicians whose opinions appear in this record, his status as treating physician entitles his opinion to great, though not necessarily dispositive, weight. Grizzle v. Pickands Mather & Co., 994 F.2d 1093, 1097 (4th Cir.1993); Hubbard v. Califano, 582 F.2d 319, 323 (4th Cir.1978). The ALJ ignored it entirely. In light of this omission, DOWCP requests a remand. This request spares us the task of deciding whether remand would be warranted solely because the ALJ gave undue credit to Dr. Zaldivar's opinion.
 
 
 20
 This claim is nineteen years old, and its processing has already taken roughly a quarter of Mr. Grigg's long life. If benefits could be granted for simple perseverance, we would not hesitate to direct an award. Unfortunately for Mr. Grigg, benefits are available only for total disability due to pneumoconiosis.[7] We inquired of DOWCP's counsel at argument whether she could assure us that proceedings on remand would be conducted quickly, and, with commendable frankness, she replied that she could not. We are left, then, only with our ability to exhort the BRB from our bully pulpit to see to it that this claim is reconsidered at once.
 
 
 21
 The claim is remanded for immediate reconsideration.
 
 
 22
 REMANDED.
 
 
 
 [1]
 Securities and Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)
 
 
 [2]
 An example of the power of a rule too simply stated to overflow its banks is the "later evidence is better" doctrine. Rooted in the notion that, because pneumoconiosis is progressive, later evidence showing a deterioration in the miner's health is not necessarily inconsistent with earlier evidence of a more robust physical condition, the idea eroded to a mindless attribution of greater credibility to the last report in the record. See Thorn v. Itmann Coal Co., 3 F.3d 713 (4th Cir.1993)
 
 
 [3]
 Though Cort could be read to reject the Marcum rule, we believe that the Third Circuit's primary concern was that (b)(3) not become a battleground for relitigation of the miner's whole-man disability. We further believe that, if Marcum is assiduously applied in the manner we outline today, there is little danger of such circumvention
 
 
 [4]
 Rebuttal of the (a)(4) presumption under (b)(3) would still be available, of course, but the evidence offered to establish it would have to directly address the miner's pulmonary impairment and rule out any connection between that impairment and dust exposure in the coal mines. This principle explains the result, if not every word of the opinion, in Warman v. Pittsburg & Midway Coal Mining Co., 839 F.2d 257 (6th Cir.1988)
 
 
 [5]
 We express no opinion as to whether or how Marcum can apply where the presumption is invoked through blood gas tests or pulmonary function studies. 20 C.F.R. Sec. 727.203(a)(2) and (a)(3)
 
 
 [6]
 Each doctor also offered an opinion that Grigg was not disabled "from a pulmonary standpoint." This opinion has no probative value on either a(b)(2) or (b)(3) rebuttal question. Thorn, 3 F.3d at 719-720
 
 
 [7]
 Grigg argues that the long delay and lost transcript have denied him due process. Though we are disgusted by the torpor of the administrative process, we cannot find on this record that Grigg has demonstrated a constitutional violation or that an undeserved award of benefits would be the appropriate remedy if he did