**David WARTH, Petitioner,**

v.

**SOUTHERN OHIO COAL COMPANY; Director, Office Of Workers' Compensation Programs, United States Department Of Labor, Respondents.**

**No. 94–2635.**

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1995.

Decided July 31, 1995.

---

**ARGUED:** John Henry Skaggs, Calwell & Mccormick, Charleston, WV, for petitioner. Brian D. Hall, Porter, Wright, Morris & Arthur, Columbus, OH, for respondents.

Before RUSSELL and WIDENER, Circuit Judges, and SPROUSE, Senior Circuit Judge.

Vacated and remanded by published opinion. Judge WIDENER wrote the opinion, in which Judge RUSSELL and Senior Judge SPROUSE concurred.

WIDENER, Circuit Judge:

Petitioner David Warth appeals from an order of the Benefits Review Board affirming a denial of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. For the following reasons, we vacate the Board's order and remand the action to the Board with instructions to remand the action to an administrative law judge for reconsideration.

It is undisputed that Warth has at least 22 years of coal mine employment, smoked for many years, and is totally disabled. The only issue on this appeal is whether the administrative law judge erred in crediting the opinions of Drs. Mutchler and Donnerberg, who concluded that Warth did not have pneumoconiosis under 20 C.F.R. § 718.202(a), over the opinion of Doctor Rasmussen, who concluded that "coal mine dust exposure with its resultant pneumoconiosis was at least a major contributing factor to his totally disabling respiratory insufficiency."

Warth argues that the administrative law judge erred in relying on Drs. Mutchler and Donnerberg's opinions because neither of these experts had read or was familiar with the several articles cited by Doctor Rasmussen in support of his conclusion that Warth's total disability was caused by coal-mine employment. Warth argues further that the administrative law judge applied an erroneously narrow definition of pneumoconiosis in concluding that Warth did not suffer from that disease.

The evidence shows that Dr. Mutchler based his opinion that Warth does not suffer from pneumoconiosis on the assumption that obstructive disorders cannot be caused by coal-mine employment. See JA 18 (Dr. Mutchler "noted that 'black lung disease' and [chronic obstructive pulmonary disease] show distinctively opposite types of physiology (*i.e.* impairment is restrictive versus obstructive), and are easily separated"); JA 19 (Dr. Donnerberg found that a diagnosis of pneumoconiosis could not be made without x-ray or tissue samples and that "a moderately severe to severe airway obstruction .... completely consistent with a diagnosis of obstructive emphysema." He concluded that the emphysema was caused solely by cigarette smoking).*

* Doctor Donnerberg concluded that "a diagnosis of pneumoconiosis or silicosis cannot be made

We agree with Warth that these assumptions are erroneous. See, e.g., *Eagle v. Armco, Inc.,* 943 F.2d 509, 511 & n. 2 (4th Cir.1991) (The opinion of an expert "that breathing coal mine dust does not cause chronic obstructive lung disease ... must be considered bizarre in view of [ ] Congress' explicit finding to the contrary. See 30 U.S.C. §§ 901(a), 902(b)."); see also 20 C.F.R. § 718.201 ("For purposes of the Act, *pneumoconiosis* means a chronic dust disease of the lung and its sequelae ... arising out of coal mine employment.... For purposes of this definition, a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.") (Italics in original).

■ Chronic obstructive lung disease thus is encompassed within the definition of pneumoconiosis for purposes of entitlement to Black Lung benefits. Dr. Mutchler's assumption to the contrary undermines his conclusions, because it is undisputed that Warth does suffer from some form of obstructive lung disease, and Drs. Mutchler and Donnerberg failed to give legitimate reasons for ruling out dust exposure in coal-mine employment as a cause or aggravation of that disease.

Because it is evident that both Drs. Mutchler and Donnerberg based their opinions on erroneous assumptions, and because the administrative law judge explicitly relied on these erroneous opinions, we vacate the Board's order and remand the case to the Board with instructions to remand the action to an administrative law judge for reconsideration in the light of this opinion. On re-

mand, the parties may offer additional evidence if they be so advised.

*VACATED AND REMANDED WITH INSTRUCTIONS.*

---

without evidence by x-ray of a nodular or linear infiltrate, an autopsy or a tissue examination." This conclusion is in direct conflict with 20 C.F.R. § 718.202(a)(4), which states that, "[a] determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such findings shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories." Subsection 202(a)(4) does not require X-ray evidence or a tissue examination. Thus, Doctor Donnerberg's opinion is based on premises that are in direct conflict with the regulations promulgated under the Act. We therefore doubt that his opinion can be accorded much, if any, weight. Cf. *Toler v. Eastern Assoc'd Coal Co.,* 43 F.3d 109, 115 (4th Cir.1995) ("We have ... disapproved similarly paradoxical reasoning in analogous circumstances.").